## IN RE MARCUS S.*
### (AC 30498)

Lavine, Beach and Lavery, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 8—officially released April 27, 2010

*Roseann Canny*, for the appellant (respondent father).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Trudy Condio*, for the minor child.

*Opinion*

BEACH, J. The respondent father appeals from the judgment of the trial court denying his motion for contempt against the petitioner, the commissioner of children and families, and transferring the care, custody and guardianship of his minor child, Marcus, to the child's paternal grandparents. On appeal, the respondent claims that the court improperly denied his motion for contempt. He also claims that the court improperly approved the permanency plan of the petitioner, which sought to revoke the commitment of Marcus to the petitioner and to transfer guardianship to the paternal grandparents. Finally, the respondent claims that the court improperly found that transferring guardianship of Marcus to his grandparents was in Marcus' best interest. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant. On January 30, 2007, the department of children and families (department) invoked a ninety-six hour hold on Marcus after the respondent contacted the department regarding injuries to Marcus' back.[1] On Feb-

---

[1] See General Statutes § 17a-101g. Marcus first came to the department's attention in December, 2003, after a referral from medical professionals regarding inadequately explained fractures on his arm. On December 5, 2003, the petitioner invoked a ninety-six hour hold on behalf of Marcus. On December 9, 2003, the petitioner filed a neglect petition accompanied by a motion for an order of temporary custody of the child. On February 28, 2005, Marcus was adjudicated a neglected child and committed to the petitioner's care. On July 20, 2005, the petitioner reunified Marcus with the respondent. The court revoked the order of commitment on September 23, 2005, and vested guardianship of Marcus in the respondent under a six month order of protective supervision. The court terminated the order of protective supervision on December 22, 2005.

At the time of the second ninety-six hour hold on behalf of Marcus in 2007, the respondent and the mother each cared for Marcus without supervision for approximately the same amount of time each week.

ruary 2, 2007, the petitioner filed a neglect petition as to Marcus, asserting that the parents had prior involvement with the department and the court, that the mother had ongoing domestic violence issues, for which she refused to remain in treatment, that the mother consistently had failed to provide appropriate supervision for Marcus and that both parents had failed to provide a safe, stable and nurturing home. The petitioner also filed a coterminous petition for termination of parental rights as to both of Marcus' parents. On February 7, 2007, the court granted the order of temporary custody, which was sustained after a contested trial to the court, *Taylor, J.*

A trial was held on the coterminous neglect and termination of parental rights petitions commencing on January 8, 2008, and concluding on February 8, 2008. On February 28, 2008, the court, *Bear, J.*, adjudicated Marcus a neglected child and committed him to the custody of the petitioner, whereby he would remain in the care of his paternal grandparents, his current placement. The court also found that the mother was responsible for the injuries to Marcus and, accordingly, terminated her parental rights but did not terminate the respondent's parental rights. The court also denied the motion of the attorney for Marcus to transfer guardianship to the paternal grandparents. The court ordered that Marcus be committed to the care, custody and guardianship of the petitioner and remain in his current placement with his paternal grandparents. It determined that it was not in the best interest of Marcus to be reunified with the respondent at that time, as the respondent stated, through his counsel, that he wanted Marcus to stay with the respondent's parents.

On April 4, 2008, the court, *Keller, J.*, ordered final, amended specific steps. On April 30, 2008, the petitioner filed a motion to review the permanency plan, which was accompanied by a motion to revoke commitment

and to transfer guardianship to the paternal grandparents. The respondent filed a motion to revoke commitment on May 30, 2008. On October 20, 2008, the respondent filed a motion for contempt, which alleged that the petitioner had disobeyed the specific steps ordered by the court on April 4, 2008. A hearing on these motions was conducted on November 3, 2008. On November 4, 2008, the court, *Bear, J.*, approved the department's permanency plan, and granted the motion to revoke commitment and to transfer guardianship to the paternal grandparents. The court also denied the respondent's motion for contempt and denied the respondent's motion to revoke commitment. This appeal followed.

I

The respondent first claims that the court erred in denying his motion for contempt. We disagree.

The respondent argues that the court ordered the department to develop and to obtain court approval for a set of specific steps. The court ordered the department, inter alia, to "[p]rovide case management services" and to "[r]efer the [r]espondent to appropriate services . . . and monitor his . . . progress and compliance." The respondent contends that this order was clear and unambiguous. He also claims that the department wilfully violated this order by failing to refer him to any services since the specific steps were ordered. The respondent further argues that the court essentially ordered the department to develop a permanency plan that sought reunification with the respondent when it ordered specific steps to be approved and that, by developing a permanency plan that sought to transfer guardianship to the grandparents, the department wilfully disobeyed that court order as well.

"[O]ur analysis of a [civil] judgment of contempt consists of two levels of inquiry. First, we must resolve

the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

The petitioner first contends that the specific steps were not sufficiently clear and unambiguous so as to support a judgment of contempt. See *In re Leah S.*, supra, 284 Conn. 697–98. We disagree. In *In re Leah S.*, Leah, a child with "serious mental health problems"; (internal quotation marks omitted); id., 690; had been committed to the custody of the petitioner. Id., 687–88. On April 11, 2003, the court ordered the department to follow specific steps for the care of Leah. Those steps included the step at issue in the present case, namely, that the department "[r]efer the [r]espondent[s] to appropriate services . . . and monitor [their] progress and compliance." (Internal quotation marks omitted.) Id., 688. On November 21, 2003, Leah's mother filed a motion for contempt alleging that "the department failed to provide the services necessary to comply with the specific steps ordered by the court, thereby delaying the family's reunification." Id., 690. The trial court agreed with Leah's mother and found the department in contempt for "failing to: seek a residential placement for Leah, provide her with psychiatric care for her mental illnesses or treatment for her migraine headaches, offer the respondents training on caring for children with mental health issues and facilitate counseling

between Leah and her twin sister." Id., 690–91. The petitioner appealed from that decision. Our Supreme Court determined that the specific steps were not sufficiently clear and unambiguous to support a finding of contempt because they did not define or clarify the meaning of "necessary measures" or "appropriate services." (Internal quotation marks omitted.) Id., 697. It stated that the department provided Leah with services in accord with the specific steps, which included counseling, medical screening and a referral to a day treatment program. Id., 697–98. In addition, the court stated that the department also provided services to Leah's foster parents. Id., 698. Accordingly, the court concluded that the department could not be found in contempt for not providing Leah with additional services because the specific steps did not indicate with any precision which services the department was ordered to provide. Id.

*In re Leah S.* is readily distinguished from the case before us. Here, the department was ordered, inter alia, to "3. [d]evelop [a] periodic treatment/permanency plan and review it with the [r]espondent . . . [and] 4. [r]efer the [r]espondent to appropriate services . . . and monitor his . . . progress and compliance." When step four is read in conjunction with step three, it is clear that the department was ordered to develop a permanency plan and to refer the respondent to services in accordance with that plan. The petitioner is correct in stating that the department could not be found in contempt for not referring the respondent to any specific services. In this case, however, the respondent is claiming that the department wilfully disregarded the court order by not referring the respondent to *any* services. We conclude that the specific steps were sufficiently clear and unambiguous to inform the department that it was ordered to refer the respondent to some services in accordance with the goal of the permanency plan.

Next, we must examine whether the court abused its discretion in refusing to make a finding of contempt. In its memorandum of decision filed November 4, 2008, the court found that the department "has worked with and provided services to the [respondent] both to the extent necessary to do so in light of the [respondent's] needs and to the extent that the [respondent] was willing to have contact with and to work with [the department] in connection with services." This finding was supported by the record. The respondent told the department on several occasions that he was too busy for services. The last time this occurred, the department wanted the respondent to participate in family therapy with Marcus, which the respondent agreed to "if [his] work schedule permits it." In addition, the department had engaged My People's Clinical Services to assist the respondent with his supervised visitation. The respondent then terminated My People's Clinical Services due to his time constraints. The respondent's argument that the department did not refer him to *any* services must fail. Accordingly, we conclude that the court did not abuse its discretion when it refused to issue the judgment of contempt.

## II

The respondent also claims that the court abused its discretion when it approved the petitioner's proposed permanency plan to transfer guardianship to the paternal grandparents, revoked Marcus' commitment and transferred guardianship to the paternal grandparents. Specifically, the respondent argues that it is in the best interest of Marcus to be returned to the respondent because the respondent has done nothing wrong and has consistently cooperated with the department. We are not persuaded.

"To determine whether a custodial placement is in the best interest of the child, the court uses its broad

discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) *In re Anthony A.*, 112 Conn. App. 643, 653–54, 963 A.2d 1057 (2009).

General Statutes § 46b-129 (m) provides in relevant part: "The [petitioner], a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . ." At trial, all the parties involved agreed that no cause for commitment existed any longer. The standard for determining whether the court should accept the petitioner's permanency plan and whether the court should transfer guardianship is

the best interest of the child. See Practice Book § 35a-14 (c) ("the judicial authority shall determine whether it is in the best interests of the child or youth to approve the permanency plan upon a fair preponderance of the evidence"); Practice Book § 35a-16 ("[m]otions to modify dispositions are dispositional in nature based on the prior adjudication, and the judicial authority shall determine whether a modification is in the best interests of the child or youth upon a fair preponderance of the evidence"). We now turn to whether the court reasonably could have found that it was in the best interest of Marcus to transfer guardianship to his paternal grandparents, rather than to the respondent.

In its memorandum of decision, the court found that it was in the best interest of Marcus to transfer guardianship to his paternal grandparents, who had had custody of him since March, 2007. It determined that the paternal grandparents had provided for Marcus' needs during that time, including his educational and medical needs, and they were ready, willing and able to continue to do so in the future. It also found that Marcus had bonded with his paternal grandparents, he was happy to live with them and he referred to their home as his home. The court noted that the respondent, who also had a loving and bonded relationship with Marcus, had a good relationship with his parents and visited with Marcus as his schedule permitted. The respondent's schedule was limited due to the fact that he worked two jobs, attended evening classes and was on call at times for one of his jobs. The court noted the fact that when asked by the department, the respondent did not articulate any plans he had for taking care of Marcus should he receive custody of him. The respondent also failed to offer any evidence at trial that it would be in the best interest of Marcus to be in his care and custody. As our review of the evidence before the court reveals, there were ample facts on which the court reasonably could conclude

that it would be in the best interest of Marcus to remain in the care and custody of his paternal grandparents and to have guardianship transferred to his grandparents.

Although our Supreme Court has recognized that "the best interests of the child are usually served by keeping the child in the home with his . . . parents"; *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 285, 455 A.2d 1313 (1983); the court also has noted consistently "the importance of permanency in children's lives." (Internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 494, 940 A.2d 733 (2008). The trial court's findings reflected these considerations in relation to Marcus' best interest. Accordingly, we conclude that the court did not improperly determine that it was in Marcus' best interest to transfer guardianship to his paternal grandparents.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.