RENEE GIORDANO *v.* CARL V. GIORDANO
(AC 31779)

DiPentima, C. J., and Gruendel and Flynn, Js.

Argued January 31—officially released March 22, 2011

*John F. Morris*, for the appellant (defendant).

*Campbell D. Barrett*, with whom, on the brief, was *Jon T. Kukucka*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Carl V. Giordano, appeals from the judgment of the trial court granting the postjudgment, amended motion for contempt filed by the plaintiff, Renee Giordano. On appeal, the defendant claims that the court improperly (1) concluded that a provision of the parties' separation agreement

(agreement) pertaining to the parties' property settlement was unambiguous and (2) determined that he failed to comply wilfully with that same provision. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The parties divorced on October 14, 2005, and their agreement was incorporated into the court's judgment of dissolution. At the time of the dissolution, the defendant was a 50 percent shareholder in several businesses that owned real property in East Hartford (East Hartford properties).[1] In exchange for retaining his ownership interests in the East Hartford properties, the defendant agreed to pay the plaintiff $425,000 in variable installments over ten years. Article VI of the agreement provided in relevant part, however, that "[i]f the [defendant] sells, transfers or otherwise divests himself of any of his interest in [the East Hartford properties], he shall immediately pay the [plaintiff] any funds due her at that time so that she is paid in full."[2]

By late 2007, the East Hartford properties began to suffer serious financial downturns, and the defendant grew concerned over the continued viability of his businesses. As such, the defendant considered the possibility of selling the East Hartford properties, "but initially found the tax and other financial consequences [of such a transaction] to be prohibitive . . . ." Nonetheless, after consulting with both his attorney and accountant, the defendant, together with his brother, decided to sell and transfer the East Hartford properties by way of a "like-kind" exchange pursuant to § 1031 of the Internal

---

[1] The remaining 50 percent shareholder interest is owned by the defendant's brother.

[2] To further secure this obligation, the parties' agreement provided for the award of alimony in the "event that the court chooses to use alimony as a means of securing the defendant's obligations regarding payment to the plaintiff . . . ."

Revenue Code.[3] On June 26, 2008, the East Hartford properties were sold for a net profit of approximately $4.1 million. To avoid tax liabilities, under the like-kind provision the net proceeds of the sale were transferred to a third party intermediary, LandAmerica 1031 Exchange Services, Inc., which was a subsidiary of LandAmerica Financial Group, Inc. (LandAmerica). Thereafter, the defendant and his brother sought to utilize the net proceeds to acquire two new commercial properties; however, before they could do so, LandAmerica declared bankruptcy, rendering the defendant's attempted like-kind exchange impossible. At no time was the plaintiff informed of any of the transactions involving the East Hartford properties.

On March 19, 2009, the plaintiff filed a postjudgment, amended motion for contempt seeking full payment of the outstanding property settlement. In support of this motion, the plaintiff argued that the like-kind exchange of the East Hartford properties constituted the type of transaction by which the defendant's payment obligation was triggered under article VI of the agreement. In response, the defendant disagreed with the plaintiff's characterization of the like-kind exchange and argued that the "transaction was not a sale or transfer triggering his obligation" under article VI. Extensive hearings ensued in the spring and summer of 2009, during which both parties presented testimony in support of their respective arguments. Then, on November 9, 2009, the court issued a memorandum of decision granting the plaintiff's amended motion for contempt, concluding

[3] "[Section 1031 of title 26 of the United States Code] is an exception to the general rule requiring recognition of gain or loss upon the sale or exchange of property. Under 26 U.S.C. § 1031 (a), if property held for productive use is exchanged for like-kind property, the taxable gain is not realized until the acquired property is disposed of." (Internal quotation marks omitted.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, 268 Conn. 264, 266 n.2, 842 A.2d 1113 (2004), quoting *American International Enterprises, Inc.* v. *Federal Deposit Ins. Corp.*, 3 F.3d 1263, 1265 n.3 (9th Cir. 1993).

both that article VI of the agreement was unambiguous as to the defendant's payment obligation in this context and that the defendant wilfully had violated that provision by not paying the plaintiff in full at the time of the like-kind exchange. This appeal followed.

The defendant now claims that the court improperly granted the plaintiff's postjudgment, amended motion for contempt. Specifically, the defendant claims that the court incorrectly determined that article VI of the agreement was unambiguous in the context of the like-kind exchange of the East Hartford properties. Additionally, the defendant claims that, even if it is assumed that article VI is unambiguous, the court incorrectly concluded that he wilfully had violated that provision, as otherwise required for a finding of contempt.

Before addressing the merits of the defendant's claims, we begin by setting forth the legal principles and standard of review governing our analysis. "[O]ur analysis of a [civil] judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *In re Marcus S.*, 120 Conn. App. 745, 749–50, 994 A.2d 253, cert. denied, 297 Conn. 914, 995 A.2d 955 (2010).

## I

## AMBIGUITY INQUIRY

The defendant first claims that article VI of the agreement is ambiguous because it fails "to consider that the property settlement trigger could only be effective to the extent that the corporate decision produced money in the defendant's hands." Stated differently, the defendant argues that article VI was meant to apply only when the sale or transfer of his ownership interests in the East Hartford properties yielded liquid assets sufficient to satisfy his payment obligation to the plaintiff. We are not persuaded.

"[I]t is familiar law that a marital dissolution agreement is a contract. . . . Thus, in reviewing it, we are guided by the law that the interpretation of a contract may either be a question of law or fact, depending on whether the language of the contract is clear and unambiguous. . . . When the language of the agreement is clear and unambiguous, its meaning is a question of law subject to plenary review. . . . When the agreement at issue is ambiguous, however, its meaning is a question of fact, and the court's interpretation thereof will not be disturbed on appeal unless it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Tobet* v. *Tobet*, 119 Conn. App. 63, 68, 986 A.2d 329 (2010).

"Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation. . . . Nevertheless, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted;

internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . [Rather], any ambiguity in a contract must emanate from the language used in the contract, [as opposed to] one party's subjective perception of the terms." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

In the present case, article VI of the agreement provides that "[i]f the [defendant] sells, transfers or otherwise divests himself of any of his interest in [the East Hartford properties] . . . he shall immediately pay the [plaintiff] any funds due her at that time so that she is paid in full." Contrary to the narrow interpretation that the defendant would ascribe to this provision, the operative terms of article VI—"sells, transfers or otherwise divests"—are broad and, arguably, all-encompassing. Instead of limiting the defendant's payment obligation to a transaction yielding only money, article VI, by its plain language, applies to *any* situation in which the defendant's ownership interest in the East Hartford properties is sold, transferred or otherwise divested. As the court correctly explained, "the 'like-kind exchange' merely deferred [the defendant's] tax liability, but did not change the fundamental nature of the transaction"—that the East Hartford properties were sold and the proceeds transferred to a third party intermediary. Moreover, we will " 'not torture words to import ambiguity' "; *Eckert* v. *Eckert*, supra, 285 Conn. 692; on the effect of article VI, when, as here, the operative terms of that provision have " 'ordinary meaning [leaving] no room for ambiguity . . . .' " Id. Indeed, given the broad connotation of the operative terms of article VI, we fail to see " 'the reasonable basis for a difference of opinion' "; *Remillard* v. *Remillard*, supra, 297 Conn. 355; as to article VI's applicability to the case at bar.

Accordingly, we agree with the court that "[u]pon [the 'like-kind'] transfer . . . the balance of the property settlement became due" pursuant to the unambiguous trigger language of article VI. "When the defendant failed to pay the full balance to the plaintiff [at the time of that transfer], he violated his obligations" under article VI of the agreement.

## II

## WILFULNESS INQUIRY

Having concluded that article VI of the agreement is sufficiently clear and unambiguous, we now turn to a consideration of "whether the trial court abused its discretion in issuing . . . [the] judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *In re Marcus S.*, supra, 120 Conn. App. 750. The defendant claims that the court incorrectly determined that he wilfully violated article VI of the agreement because he lacked the ability to comply with the payment obligation of that provision. Specifically, the defendant argues that, given his shared ownership interest in the East Hartford properties, the court's failure to consider his inability to disburse the proceeds of the like-kind exchange to the benefit of the plaintiff constituted an abuse of discretion. Further, the defendant maintains that, even if he had the ability to disburse the proceeds in favor of the plaintiff, the court failed to appreciate that he lacked the financial resources to satisfy the plaintiff's claim under article VI. We disagree.

"In order to constitute contempt, a party's conduct must be wilful. . . . The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's

mind. . . . A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. [Also, it] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 72 Conn. App. 408, 423–24, 805 A.2d 745 (2002).

In *Sablosky* v. *Sablosky*, 258 Conn. 713, 719–20, 784 A.2d 890 (2001), our Supreme Court explained that "[a]n order of the court must be obeyed until it has been modified or successfully challenged. . . . [T]he fact that the plaintiff exercised *self-help* when he was not entitled to do so . . . by disobeying the court's order without first seeking a modification was a sufficient basis for the trial court's contrary exercise of discretion. The [trial] court [is] entitled to determine that to exonerate the plaintiff would be an undue inducement to litigants' exercise of *self-help*." (Citations omitted; emphasis in original; internal quotation marks omitted.)

Here, the defendant clearly violated the terms of article VI of the agreement by not paying the plaintiff upon the like-kind transfer of the East Hartford properties. Furthermore, at no time before or after the transfer did the defendant pursue a motion for modification to the agreement to reflect the specific transaction at issue or how that transaction would have triggered enforcement of article VI. See id., 722 ("[a]lthough one party may believe that his . . . situation satisfies [self-help avoidance of a court order], until a motion is brought to and is granted by the court, that party may be held in contempt in the discretion of the trial court if, in the

interim, the complaining party fails to abide by the support order"). Nor do we find persuasive the defendant's argument that his inability to comply with article VI constitutes a legitimate ground for violating the order in this instance. As the court articulated in its memorandum of decision, the defendant's "most recent financial affidavit valued his interest in his businesses as worth $1.275 million . . . [and] [h]e thus owns sufficient assets to satisfy his obligation to pay the full property settlement . . . ." The fact that the defendant does not exercise majority shareholder control with respect to his businesses is a nonissue, as the defendant has the ability to "pledge his existing corporate stock [in favor of the plaintiff] and produce his stock certificates to be held in escrow until the [plaintiff] is paid in full." (Internal quotation marks omitted.) Therefore, on the basis of the facts in this case, we cannot say that the court's finding that the defendant wilfully violated article VI of the agreement constituted an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.