******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RENEE GIORDANO *v.* CARL V. GIORDANO
(AC 35415)

Beach, Sheldon and Norcott, Js.

*Argued May 21—officially released October 7, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Solomon, J. [dissolution judgment];
Westbrook, J. [motion for contempt, motion for
modification].)

*John F. Morris*, for the appellant (defendant).

*Kathleen M. Grover*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Carl V. Giordano, appeals from the trial court's rulings on various postjudgment motions. He claims that the court erred in (1) granting the motion for contempt filed by the plaintiff, Renee Giordano, (2) awarding the plaintiff attorney's fees in connection with her motion for contempt, and (3) calculating its modification of child support. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties were married in 1992. Two children were born of the marriage. In 2004, the plaintiff filed for divorce. In October, 2005, the court entered a judgment of dissolution that incorporated into the judgment a separation agreement that had been entered into by the parties.

The resolution of the defendant's appeal requires an examination of a postjudgment agreement that was entered into following a prior appeal. See *Giordano* v. *Giordano*, 127 Conn. App. 498, 14 A.3d 1058 (2011). The following facts were recited in the course of our decision in the prior appeal. The defendant was a 50 percent shareholder in businesses owning real property in East Hartford. Id., 500. Under the settlement agreement, which was incorporated into the dissolution judgment, the defendant was to pay the plaintiff $425,000 in various installments over ten years in exchange for retaining his ownership interests in the East Hartford properties. Id. Article VI of this agreement provided in part that " '[i]f the [defendant] sells, transfers or otherwise divests himself of any of his interest in [the East Hartford properties], he shall immediately pay the [plaintiff] any funds due her at that time so that she is paid in full.' " Id. The defendant and his business partner sold the East Hartford properties via a " 'like-kind' " exchange for a net profit of approximately $4.1 million. Id., 500–501. In order to avoid certain tax liabilities for like-kind exchanges, the net proceeds of the sale were transferred to a third party intermediary, LandAmerica 1031 Exchange Services, Inc., which was a subsidiary of LandAmerica Financial Group, Inc. (LandAmerica). Id., 501. The defendant and his business partner sought to utilize the net proceeds from the sale to purchase new properties, but before they could do so, LandAmerica declared bankruptcy. Id. Thus, the defendant's attempted like-kind exchange was not possible. Id. The defendant and his business partner became creditors of the LandAmerica bankruptcy estate. Id.

The plaintiff filed a postjudgment motion for contempt seeking full payment of the outstanding property settlement, arguing that the like-kind exchange of the East Hartford properties triggered the defendant's payment obligation under article VI of the agreement. Id.

The trial court granted the plaintiff's motion for contempt, and concluded that the defendant wilfully had violated the unambiguous provisions of article VI by not paying the plaintiff in full at the time of the exchange. Id., 502. On appeal, the defendant claimed that the trial court improperly had granted the plaintiff's postjudgment motion for contempt, erred in determining that article VI was unambiguous, and, alternatively, erred in concluding that he was in wilful contempt. Id. This court concluded that the trial court properly determined that the provision of the agreement concerning the defendant's payment obligation was unambiguous in the context of the like-kind exchange of the properties, that article VI was triggered because the defendant had sold the properties, and that the trial court did not err in finding the defendant in contempt for failure to pay the plaintiff in accordance with article VI. Id., 503–507.

Following the release of our decision in *Giordano* v. *Giordano*, supra, 127 Conn. App. 498, the parties entered into an agreement "settling all of the claims and demands . . . as it relates to the property settlement." The agreement was entered as an order of the court on June 1, 2011 (June, 2011 order). Paragraph 3 of the June, 2011 order, entitled "transfers," stated in a preliminary paragraph that "[t]he defendant intends to transfer to his business partner any interest he may have in the real property known as 160 Bridge Street, East Windsor . . . ." Paragraph 3 (a) provided that at the time of that transfer, the corporate purchaser shall pay $175,000 to the plaintiff and $25,000 to the defendant. Paragraph 3 (b) provided that, in addition to the payment in paragraph 3 (a), the defendant shall pay to the plaintiff $175,000 as lump sum alimony, and set forth a payment schedule. Under paragraph 3 (c), the defendant was to pay the plaintiff 50 percent of any "additional" moneys received from the "transfer of his business interests" toward the $175,000 lump sum alimony. Paragraph 3 (d) stated that "[s]hould the defendant receive any future [moneys] from the LandAmerica bankruptcy or from any future . . . litigation as regards the LandAmerica issues he shall apply 50 [percent] of any net sums he receives towards any unpaid part of the lump sum alimony . . . ." Under paragraph 3 (e), the defendant was to arrange to provide the plaintiff with a notice of receipt if he received any sums due under paragraphs (c) or (d).

On June 20, 2012, the plaintiff filed a motion for contempt, stating that the defendant had not complied with the June, 2011 order because he had received moneys from the LandAmerica bankruptcy, but had not paid her 50 percent of the net proceeds. Pursuant to a court order, the defendant deposited $12,090 in escrow, which represented part of the money he had received from the LandAmerica bankruptcy proceedings.[1] On January 7, 2013, an evidentiary hearing was held on the

motion for contempt. The court granted the motion, ordered that the $12,090 held in escrow be released to the plaintiff, and awarded the plaintiff $421.71 in costs and $6577.07 in attorney's fees. On February 7, 2013, the court sua sponte issued the following clarification: "The court issued an oral decision [on January 7, 2013] finding the defendant in contempt and directing twelve thousand and ninety dollars ($12,090) being held in escrow by the plaintiff's counsel be released. The $12,090 is 50 [percent] of the gross funds in dispute. According to the [June, 2011 order] the plaintiff is entitled to 50 [percent] of the net amount received by the defendant. As such the court orders that only the net portion of the $12,090 shall be released to the plaintiff."

The defendant filed a motion for modification of child support as a result of one of the parties' two children attaining the age of majority. The court granted the defendant's motion for a downward modification, and in doing so relied on the plaintiff's child support guidelines worksheet. The defendant filed the present appeal prior to the court's granting of his motion for modification, but later amended the appeal to include a claim that the court erred in calculating the downward modification.

I

The defendant first claims that the court erred in granting the plaintiff's June, 2012 motion for contempt. We disagree.

"Guided by the principles that limit our review, our analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

A

The defendant's first argument regarding the motion for contempt essentially concerns the first inquiry in our analysis of a judgment of contempt—whether the underlying order found to have been violated (June, 2011 order) was clear and unambiguous. He argues that the court erred in interpreting the June, 2011 order to apply in the present situation when, in fact, the plaintiff was not clearly entitled to the $12,090 from the LandAmerica bankruptcy under paragraph 3 of that order. He

discusses paragraphs 3 (c) and (d) and argues that neither paragraph applies. He contends that paragraph 3 (c) does not apply because the moneys he received from the LandAmerica bankruptcy are not "additional" moneys as contemplated by paragraph 3 (c), but, rather, are the exact amount of moneys he was permitted to retain pursuant to a purchase and sales agreement. He also argues that paragraph 3 (d) does not apply because "only the companies are the beneficiaries of any [moneys] from the LandAmerica bankruptcy, not the defendant." We are not persuaded that the court erred in concluding that the June, 2011 order clearly and unambiguously required the defendant to pay the moneys at issue to the plaintiff.

Paragraphs 3 (c) and (d) of the June, 2011 order are clear and unambiguous. Paragraph 3 (c) clearly provides that the defendant was to pay the plaintiff 50 percent of any "additional" moneys received from the "transfer of his business interests" toward the $175,000 lump sum alimony. Paragraph 3 (d) provides that "[s]hould the defendant receive any future [moneys] from the LandAmerica bankruptcy . . . litigation . . . he shall apply 50 [percent] of any net sums he receives towards any unpaid part of the lump sum alimony described hereinbefore, with one week of his receipt." Paragraph 3 (d) clearly and unambiguously provides that the defendant shall apply 50 percent of any moneys received from the LandAmerica bankruptcy toward any unpaid alimony. It makes no difference if funds were funneled through a corporate entity.

In her June, 2012 motion for contempt, the plaintiff argued that the defendant had not complied with the June, 2011 order because he had received moneys, but had not paid her 50 percent of the net proceeds. The court found, after an evidentiary hearing, that the $12,090 held in escrow was 50 percent of the gross funds in dispute, and that under the June, 2011 order, the plaintiff was entitled to the $12,090.

The defendant cannot prevail on his argument that the plaintiff was not entitled to $12,090 under paragraph 3 (c) of the June, 2011 order because the moneys received were not "additional" or under paragraph 3 (d), because the $12,090 was received by the companies, and not himself. In its order, the court did not clearly specify whether it had found that the defendant violated paragraph 3 (c) or paragraph 3 (d), both of which were referenced by the plaintiff's counsel in her final argument. The paragraphs, however, are unambiguous, and we cannot conclude on the record before us that the court erred in concluding either that the moneys received were "additional" or whether they were received by the defendant.[2]

The record contains a partial transcript of the January 7, 2013 hearing. Although the transcript appears to pick up in midstream, we note that, in the excerpt provided,

the defendant testified that he was owed moneys from the LandAmerica bankruptcy, which funds were being repaid back to him slowly. He also testified that he had received "additional funds" from LandAmerica. Two checks, payable to the defendant in the amounts of $15,717 and $8463—50 percent of which combined amount is $12,090—were submitted into evidence. We conclude that the court did not err in interpreting and applying the June, 2011 order.

B

The defendant next argues that the court erred in granting the plaintiff's June, 2012 motion for contempt because his nonpayment was not wilful; rather, he claims that he genuinely believed that he had no obligation to share the moneys with the plaintiff. We are not persuaded.

In its January 7, 2013 decision on the plaintiff's motion for contempt, the court found that the defendant wilfully failed to comply with the June, 2011 order. The court noted that he had not provided the plaintiff with notice that he had received the funds, nor had he paid the plaintiff 50 percent of moneys that he had received from the LandAmerica bankruptcy. After an evidentiary hearing, the court found that the defendant had the ability to pay, but wilfully had failed to do so.

On the record provided to us, we cannot conclude that the court's finding of wilfulness was clearly erroneous. The defendant testified that he had received additional funds from LandAmerica and funds from the LandAmerica bankruptcy were being paid back to him. From this evidence, the court could have concluded that the defendant had available funds. Further, the court could have found that the defendant was aware of the June, 2011 order because he, along with the plaintiff, had entered into the unambiguous agreement on May 5, 2011, which was later adopted by and became an order of the court on June 1, 2011.

Moreover, the defendant cannot prevail on his argument that the existence of a good faith dispute prevented a finding of contempt. "A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, supra, 127 Conn. App. 506. We cannot conclude that the court abused its discretion in concluding that the defendant wilfully violated the June, 2011 order despite the defendant's argument of a good faith misunderstanding.

II

The defendant next claims that the court erred in its award of attorney's fees. We disagree.

The court stated, in granting the plaintiff's motion for attorney's fees in connection with her motion for contempt, that it did so pursuant to both General Statutes § 46b-87, which permits the recovery of attorney's fees following findings of contempt, and the separation agreement, which permits recovery of attorney's fees in the event of noncompliance.

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007).

The standard typically employed in a review of an award of attorney's fees is abuse of discretion. See, e.g., *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004). The defendant's claim, however, requires us to review the language of the the separation agreement itself and the June, 2011 order, which was an agreement by the parties to modify a portion of the separation agreement. Both the separation agreement and its stipulated to subsequent modification are construed as contracts. "Because a stipulation is considered a contract, [o]ur interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . Thus, if there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Citation omitted; internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 390, 985 A.2d 319 (2009).

In this case, there is obviously statutory authority to award attorney's fees. Section 46b-87 provides that a trial court may, in the exercise of its discretion, award attorney's fees to the prevailing party in a contempt proceeding. Our plenary review of the agreements between the parties reveals that, at the very least, there was no contractual prohibition against awarding attorney's fees. We need not reach, then, the issue of whether the agreements positively authorized the award of attorney's fees.[3]

The defendant argues that paragraph 7 of the June, 2011 order barred the plaintiff from recovering attorney's fees. Paragraph 7 provides: "Said payments [provided for in paragraph 3] to the plaintiff from the

corporation and as future alimony represent complete payment on the property settlement portions of the judgment as outlined in the judgment of dissolution, article VI. Said payments are in complete and final payment of all claims owed by the defendant to the plaintiff pursuant to the judgment of dissolution and any subsequent or related court orders, including contempt claims, weekly payments, interest, attorney's fees or the like, without exception, as may relate to the property settlement. Upon receipt of the initial $175,000 sum, the plaintiff shall immediately return to the defendant the originals of all stock certificates held by her, and shall execute a release of all claims against the defendant under the judgment and all subsequent orders as relates to the property settlement to date. The [plaintiff] hereby waives and relinquishes any and all claims that she may have to any other property settlement claims, now and in the future, whether in the form of a property settlement, and/or any claims howsoever related to any interest in the defendant's business, any future claims, [moneys], damages, or any proceeds from said business interests except as provided herein." The defendant contends that, because the award of attorney's fees directly relates to her claims regarding proceeds from his business interests, her recovery of attorney's fees is barred by paragraph 7.

Under paragraph 7 of the June, 2011 order, the plaintiff relinquished all property settlement claims and claims related to any interest in the defendant's business upon payment of the agreed upon sums. Additionally, paragraph 12 makes clear that the agreement settled all claims that the plaintiff may have had under the property settlement provisions of the separation agreement. Paragraph 12 provides: "It is the intention of the parties that henceforth this agreement shall act as a substitute for all property settlement claims of the judgment in any matters between them."

The June, 2011 order, of course, contemplates that the required payments will be made; those payments were to be made as consideration for the past settlement obligation and any potential claims arising thereunder, including attorney's fees. The order logically does not address the situation where payments are not made. The only reasonable interpretation is that the language describing all "subsequent" claims for contempt, attorney's fees, and the like refers to claims accruing after the dissolution judgment until the execution of the June, 2011 order;[4] any such claim was considered to be to be covered by the payments contemplated in paragraph 3. The plaintiff also waived any additional claim she may have had as to the defendant's business interests. Neither provision barred attorney's fees arising out of contempt claims occurring *after* the execution of the June, 2011 order. See, e.g., *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 414 n.4, 722 A.2d 271 (1999) (bizarre results to be avoided in con-

tract interpretation); see also *Creatura* v. *Creatura*, 122 Conn. App. 47, 55–56, 998 A.2d 798 (2010) (effect given to every contract provision in order to reach overall reasonable result; individual contract clauses not to be construed by taking them out of context).

### III

The defendant last claims that the court erred in its modification of child support because it relied on an erroneous child support guideline worksheet. We disagree.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 487–88, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

"The [child support] guidelines worksheet is based on net income; weekly gross income is listed on the first line on the worksheet, and the subsequent lines list various deductions, including federal income tax withheld and social security tax. . . . The guidelines are used by the court to determine a presumptive child support payment, which is to be deviated from only under extraordinary circumstances." (Citation omitted; internal quotation marks omitted.) *Golden* v. *Mandel*, 110 Conn. App. 376, 386, 955 A.2d 115 (2008). Our regulations define "gross income" as "the average weekly earned and unearned income from all sources before deductions, including but not limited to the items listed in subparagraph (A) of this subdivision, but excluding the items listed in subparagraph (B) of this subdivision." Regs., Conn. State Agencies § 46b-215a-1 (11).

The defendant filed a motion for modification of child support dated January 7, 2013, on the ground that the elder of the parties' two children had attained the age of majority and only one child remained a minor. Evidentiary hearings were held on February 1 and June 18, 2013. The plaintiff submitted into evidence a child

support guidelines worksheet listing her weekly gross income as $464 and the presumptive current support amount as $193 per week. The court granted the defendant's motion for modification, and reduced the defendant's weekly child support payments from $228 to $193, retroactive to January 7, 2013.

The defendant argues that the court erred in accepting the plaintiff's child support guidelines worksheet as credible because that worksheet stated an incorrect amount for gross income that was different from the amount stated on the plaintiff's financial affidavit. The court considered evidence on the issue of child support, and we have not been presented with a coherent claim that the finding is not supported by sufficient evidence. On the record before us, we cannot conclude that the court abused its discretion in finding credible the plaintiff's calculation of her gross income on her child support guidelines worksheet.

The defendant also argues that "none of [the plaintiff's] stated deductions on her worksheet matched those described on her financial affidavit and on exhibit B [the plaintiff's 2012 W-2 form], thus relying on wrong deductions for the worksheet analysis." The defendant does not offer any additional analysis, beyond this sentence, of why the deductions are incorrect. We are unable to conclude that the court abused its discretion in accepting the deductions taken by the plaintiff on her child support guidelines worksheet.

The defendant finally argues that the plaintiff incorrectly calculated the defendant's tax liability on her child support guidelines worksheet because, at the hearing on the motion for modification, her counsel repeatedly objected to the evidence submitted by the defendant's counsel as to his tax liability, claiming it was hearsay. Yet, the defendant argues, the plaintiff calculated the defendant's tax liability using a computer program, which calculations were hearsay. The defendant is taking issue with the actions at the hearing of the *plaintiff's counsel*, which are not reviewable in this appeal. To the extent that the defendant is claiming that the court erred in failing to admit into evidence his calculations of his tax liability and improperly admitted into evidence the plaintiff's calculations, the defendant does not direct our attention to any specific rulings by the court regarding the admissibility of tax liability evidence with respect to either party. Thus, we are unable to review the claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] It appears that $12,090 was half of the distribution received by the defendant from the bankruptcy proceedings.

[2] Even if the parties intended paragraph 3 (c) of the June, 2011 order to apply to transactions not involving LandAmerica, there can be no question that paragraph 3 (d) applied to such transactions.

[3] We also need not address, sua sponte, the issue of whether the statutory authorization of attorney's fees, in the discretion of the court, lawfully can

be limited by contractual agreement.

[4] Significantly, the language relied on by the defendant would, if applied in the manner suggested by the defendant, bar payment with respect to contempt claims accruing at any time in the indefinite future. Language severely limiting the enforceability of an agreement, incorporated into a court order, would be bizarre. Language compromising and releasing accrued claims is not bizarre.

---