******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HUGH F. HALL *v.* DEBORAH HALL
(AC 38834)

Lavine, Sheldon and Bear, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court holding
him in contempt for violating a court order and from the court's denials
of his motion for reconsideration and the parties' joint motion to open
and vacate the contempt judgment. Following the commencement of
the dissolution action, the parties' entered into a pendente lite stipulation
to release certain funds held in an escrow account to them for deposit
into a joint bank account that required the signature of both parties
prior to any withdrawal of funds. The trial court approved the stipulation
and made it an order of the court. The parties then knowingly set up
a joint account that did not comply with the court's order because
it permitted online access and, therefore, did not require the parties'
signatures prior to the withdrawal of funds. Thereafter, the plaintiff
unilaterally withdrew $70,219.99 from the joint account and deposited
the funds into his personal savings account, allegedly to protect the
funds from the defendant's misuse. In response, the defendant filed a
motion for contempt alleging that the plaintiff had wilfully violated the
court's order by withdrawing the funds. Following a hearing, the trial
court granted the motion for contempt, and the plaintiff filed a motion
for reconsideration. In support of his motion, the plaintiff submitted an
affidavit in which he averred that his counsel had advised him that he
could transfer funds from the joint account to prevent the defendant's
dissipation of marital assets. He attached to his affidavit an e-mail
exchange allegedly between himself and his counsel discussing the sub-
ject withdrawal. The trial court denied the motion for reconsideration.
Thereafter, the parties entered into a separation agreement, which the
court incorporated into its dissolution judgment. In accordance with a
provision of the separation agreement, the parties filed a joint motion
to open and vacate the judgment of contempt on the ground that the
findings therein could interfere with the parties' future employment.
Following a hearing, the court denied the motion, concluding, inter alia,
that there was no evidence presented that demonstrated the adverse
effect that the contempt finding would have on the plaintiff's employ-
ment. On the plaintiff's amended appeal to this court, *held*:

1. The plaintiff could not prevail on his claim that the trial court improperly
held him in contempt, which was based on his claim that he was not
in wilful violation of the court's order because he relied on the advice
of counsel when he withdrew the subject funds from the parties' joint
account in violation of the court's order: there was no basis in the record
on which to conclude that the trial court abused its discretion in finding
the plaintiff in contempt, the record having lacked the evidentiary foun-
dation to support the plaintiff's assertion that he testified repeatedly
during the hearing on the motion for contempt about his reliance on
his counsel's advice when he withdrew the funds from the joint account,
as the plaintiff did not testify or present any evidence that he, in fact,
had relied on counsel's advice but, rather, testified, at most, that he had
consulted with counsel about the appropriate course of action under
the circumstances, and this court could not speculate as to what the
plaintiff purportedly meant to say during the contempt proceedings or
assume that he actually relied on counsel's advice; moreover, this court
was not persuaded by the plaintiff's claim that the trial court com-
pounded its error by denying his motion for reconsideration because it
ignored evidence that he had relied on the advice of counsel when
withdrawing the funds, as his submission of additional evidence in
support of his motion in the form of his affidavit and the e-mail exchange
allegedly between himself and his counsel amounted to an attempted
impermissible second bite of the apple after a multiday hearing on the
defendant's motion for contempt.

2. The trial court did not abuse its discretion in denying the parties' joint

motion to open and vacate the judgment of contempt on the basis of its conclusion that there was no evidence presented demonstrating the adverse effect that the contempt finding would have on the plaintiff's employment; although the plaintiff and his counsel both argued during the proceedings on the motion to open and vacate that the contempt finding would be very deleterious to the plaintiff's career, argument is not evidence, and the plaintiff failed to point to any evidence in the record that supported his claim that the contempt finding would have an adverse effect on his career.

Argued December 6, 2017—officially released June 19, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Colin, J.*, issued an order in accordance with the parties' stipulation; thereafter, the court, *Tindill, J.*, granted the defendant's motion for contempt; subsequently, the court, *Tindill, J.*, denied the plaintiff's motion for reconsideration; thereafter, the matter was tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; subsequently, the plaintiff appealed to this court; thereafter, the court, *Tindill, J.*, denied the parties' joint motion to open and vacate the judgment of contempt, and the plaintiff filed an amended appeal with this court; subsequently, the court, *Tindill, J.*, issued an articulation and a memorandum of decision in compliance with an order of this court. *Affirmed.*

*Barbara M. Schellenberg*, with whom, on the brief, was *Richard L. Albrecht*, for the appellant (plaintiff).

*Opinion*

LAVINE, J. In this amended appeal, the plaintiff, Hugh F. Hall, appeals from the trial court's judgment of civil contempt rendered against him because he, in violation of an order of the court, unilaterally withdrew funds from a joint bank account and deposited them into his personal savings account, and because the parties placed the funds in an account that did not meet the requirements of the court order. On appeal, the plaintiff claims that the court (1) improperly held him in contempt although he allegedly relied on the advice of counsel when he withdrew the funds, and (2) improperly denied the parties' joint motion to open and vacate the judgment of contempt. We affirm the judgment of the trial court.

The following undisputed facts and procedural history provide the context for this appeal. The parties were married on August 10, 1996, and have three children together. On February 3, 2014, the plaintiff commenced a dissolution action. The parties subsequently entered into a pendente lite stipulation on October 27, 2014, which provided in relevant part: "The funds currently being held in escrow [by a law firm] in the approximate amount of $533,588 shall be released to the parties for deposit into a joint bank account requiring the signature of both parties prior to any withdrawals . . . ." The court, *Colin, J.*, approved the parties' stipulation and made it a court order. After this order, the parties set up a joint account and transferred the escrow funds into it.

Approximately one year later, on September 23, 2015, the defendant, Deborah Hall, filed a motion for contempt. She alleged that on September 22, 2015, the plaintiff committed a wilful violation of the October 27, 2014 court order when he withdrew the sum of $70,219.99 from the joint account—the balance of the account at the time—and placed it into a separate, personal account.[1] Following an evidentiary hearing, the court, *Tindill, J.*, on December 7, 2015, granted the defendant's motion for contempt. Thereafter, the plaintiff, who then was self-represented, filed a motion for reconsideration, which the court denied without issuing a written decision.

Subsequent to the court's judgment of contempt; see footnote 1 of this opinion; on January 27, 2016, the parties entered into a separation agreement. That same day, the court, *Hon. Stanley Novack*, judge trial referee, accepted the parties' separation agreement and incorporated it into its judgment of dissolution. Section 10 of the separation agreement provided in relevant part as follows: "The parties stipulate and agree that they will file a joint motion to open and vacate the findings of contempt in that they believe such findings could interfere with the parties' future employment. . . . The

parties understand that this motion must be filed within four (4) months of each of the orders and it is within the discretion of the Court to act thereon." Also on January 27, 2016, the plaintiff filed an appeal from the court's contempt judgment[2] and its denial of his motion for reconsideration.

Five days later, on February 1, 2016, the parties filed a joint motion to open and vacate the judgment of contempt requesting that the court vacate its order of contempt. The parties specifically relied on § 10 of their separation agreement in support of their joint motion to open and vacate. Judge Tindill denied the joint motion to open and vacate on March 9, 2016, without issuing a written decision. The plaintiff then filed an amended appeal on March 29, 2016, challenging the denial of the motion to open and vacate. The plaintiff's amended appeal is now before this court. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff's first claim is that the trial court improperly held him in contempt of court. He argues that a court should not find that a litigant wilfully violates a court order when he or she reasonably acts in reliance on counsel's advice. According to the plaintiff, his attorney "advised him" to withdraw the funds from the joint account in violation of the October 27, 2014 court order, and the court failed to address "the evidence on advice of counsel, despite the fact that [he] testified about this repeatedly." He also claims that the court "compounded its error by denying reconsideration" because it overlooked the evidence demonstrating that he in fact relied on counsel's advice in withdrawing funds from the joint account. We are unpersuaded.

The record and the court's written memorandum of decision on the defendant's motion for contempt reveal the following undisputed facts and procedural history. After the parties set up the joint bank account pursuant to the court's October 27, 2014 order, they knew that the account did not comply with that order "the very first day" they opened it. More specifically, the joint account they set up permitted online access and, therefore, did not require signatures from either party, as required by the order, prior to the withdrawal or transfer of funds. The plaintiff testified that banks no longer require dual signatures on accounts. Nonetheless, the court order mandating that the funds be placed in an account "requiring the signature of both parties prior to any withdrawals" was not modified before the defendant filed her motion for contempt.

At some point thereafter, the plaintiff became concerned that the defendant was unilaterally withdrawing funds from the joint account and spending them on alcohol and drugs. Therefore, according to the plaintiff,

on September 22, 2015, he withdrew the $70,219.99 from the joint account, without seeking the court's approval, in an attempt to preserve the remaining marital assets contained in that account. He then placed the withdrawn funds into a separate account solely in his name that the defendant could not access. On November 2, 2015, he testified: "I felt I was complying with the terms of the court order by moving the funds and wanting to put them into an account that did comply with the court order. And I demanded that [the defendant] meet me at a bank where we could set up such an account that did comply with the order." Immediately after making this statement, the following examination took place regarding the September 22, 2015 withdrawal of the $70,219.99 from the joint account:

"The Court: *Were you represented by counsel at that time*?

"[The Plaintiff]: *Yes, I did consult with counsel.*

"[The Defendant's Counsel]: Yes. And so is your testimony, Mr. Hall—because I'm hearing you say two different things—is your testimony today [that] the reason why you moved the account, the money from the account, was because it didn't comply with the original court order or was it because you had a concern that [the defendant] was becoming drug-dependent at that point in time?

"[The Plaintiff]: The reason I felt action had to be taken was because I had recently learned about her drug abuse. The reason I felt that it was justified in acting to move the funds at that time was in order— so that I could comply with the court order." (Emphasis added.)

The court then adjourned for the day, and the parties did not appear in court again in connection with the contempt proceeding until December 1, 2015. During the December 1, 2015 hearing, the parties revisited the plaintiff's September, 2015 withdrawal of the $70,219.99. The plaintiff again testified that he withdrew the $70,219.99 from the joint account because the defendant was withdrawing funds from that same account and "spending it on cocaine binges." The court then asked the plaintiff, "And when was it that you removed the money, September what?" In response, the plaintiff testified, "Sometime in September *after consulting with my counsel about the situation*." (Emphasis added.)

At various times during the proceeding, the plaintiff testified that he withdrew funds from the parties' joint account after consulting with counsel, but did not testify that he was advised by counsel to withdraw the $70,219.99 before he did so.[3] When the plaintiff's counsel asked him why he should not be held in contempt, the plaintiff testified: "I believe that what I was doing was in order to comply with Judge Colin's orders from

October, 2014. And that I was not utilizing the funds in any way in violation of the spirit of that agreement and that I took steps to try and work with her to comply with the order, set up a compliant account but at that point in time, there was no further cooperation on her side. *Furthermore, I would say throughout the entire process, I was consulting with counsel about what was the proper course of action.*" (Emphasis added.)

The court completed the evidentiary portion of the hearing on December 1, 2015. The parties agreed that the record contained sufficient evidence for the court to rule on both motions for contempt; see footnote 1 of this opinion; and waived argument.

In its December 7, 2015 memorandum of decision, the court found that the plaintiff wilfully had violated the court's October 27, 2014 order. The court first found that, on April 28, 2015, the plaintiff "unilaterally and without the defendant's consent, withdrew $237,643.11 and deposited it into his own . . . savings account."[4] It also found that, "[o]n September 22, 2015, the plaintiff wilfully violated the order a second time when he moved $70,219.99 from the joint account to that same savings account. Unlike the account into which the escrow funds were originally deposited pursuant to the court order, the defendant did not have access to the account into which the money was transferred." The court further found that the plaintiff acknowledged that his conduct violated the court order, but that he asserted five reasons as to why it was not "wilful." The court rejected each of the plaintiff's contentions. It did not find that the plaintiff had relied on the advice of counsel when he transferred the funds into his personal account, nor did it state that the plaintiff made any argument to that effect.

After the court found the plaintiff in contempt, the plaintiff, then self-represented, filed a motion for reconsideration, which was later amended after he retained new counsel. Among other claims, he asserted that "the court inquired of the plaintiff as to whether in moving funds from the parties' joint account he acted on the advice of counsel, to which he testified that he had." He claimed that his previous counsel did not pursue this line of questioning and also "did not offer into evidence exculpatory e-mails from September, 2015." In support of his motion for reconsideration, the plaintiff submitted an affidavit in which he averred that in August, 2015, his previous counsel had advised him that he could transfer funds from the joint account in order to prevent dissipation of marital assets.[5] He further asserted, for the first time, that his previous counsel confirmed that advice via e-mail in September, 2015. In support of this assertion, the plaintiff attached to his affidavit an e-mail chain allegedly between himself and his previous counsel discussing the September 22, 2015 withdrawal. The court denied the motion for reconsid-

eration on January 4, 2016, without issuing a written decision.

On July 15, 2016, the plaintiff filed a motion for articulation, requesting that the court provide the factual and legal bases for denying both the motion for reconsideration and the joint motion to open and vacate. See part II of this opinion. On July 27, 2016, the court denied the plaintiff's motion for articulation, and the plaintiff subsequently filed in this court a motion for review of that denial. This court granted the motion for review and, on October 26, 2016, ordered the court to (1) articulate the factual and legal bases for its denial of the plaintiff's motion for reconsideration, and (2) issue a written memorandum of decision detailing the factual and legal bases for its denial of the joint motion to open and vacate.

On January 9, 2017, in compliance with this court's October 26, 2016 order, the trial court issued an articulation, detailing its factual and legal reasons for denying the plaintiff's motion for reconsideration. Although the court set forth in great detail the reasons for its decision, only the following portions are directly relevant to this appeal. It initially noted "that there had been no misapprehension of facts by the court." The court determined that it was undisputed that the plaintiff violated the court order by making the two separate withdrawals of $237,643.11 and $70,219.99 from the joint account, a total of $307,863.10. It also stated that the plaintiff "is a licensed attorney in New York and Massachusetts and therefore has a better understanding and appreciation of the law and legal procedures than the average litigant or layperson." The plaintiff's assertions in his motion for reconsideration, according to the court, also "validate[d] [its] finding that [he] wilfully engaged in self-help . . . ." Finally, it stated that the plaintiff's "dissatisfaction with the services and counsel of his attorney of record during the evidentiary hearing is not a basis for reconsideration of the court's finding of wilful contempt based on the evidence . . . ."

We now turn to the legal principles governing our review of the plaintiff's claim. "[O]ur analysis of a [civil] judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 127 Conn. App.

498, 502, 14 A.3d 1058 (2011).

"A party to a court proceeding must obey the court's orders unless and until they are modified or rescinded, and may not engage in self-help by disobeying a court order to achieve the party's desired end. . . .

"The court has an array of tools available to it to enforce its orders, the most prominent being its contempt power. Our law recognizes two broad types of contempt: criminal and civil. . . . The two are distinguished by the type of penalty imposed. . . .

"To impose contempt penalties, whether criminal or civil, the trial court must make a contempt finding, and this requires the court to find that the offending party wilfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful. . . . A good faith dispute or legitimate misunderstanding about the mandates of an order may well preclude a finding of wilfulness. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties." (Citations omitted; footnote omitted; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 97–99, 161 A.3d 1236 (2017). The clear and convincing evidence standard of proof applies to civil contempt proceedings like those at issue here. See *Brody* v. *Brody*, 315 Conn. 300, 318–19, 105 A.3d 887 (2015).

The plaintiff does not challenge the court's finding that the October 27, 2014 order, which incorporated the parties' stipulation, was clear and unambiguous.[6] He focuses his appeal instead on the court's judgment of contempt. He argues that in withdrawing the $70,219.99 from the parties' joint account in September, 2015, he acted on the advice of counsel. He states in support of his argument that he "testified about this repeatedly" during the contempt proceeding and that "his former attorney *advised him*" to remove the funds from the joint account. (Emphasis added.) We disagree that the plaintiff testified, or presented any other evidence, that he *relied* on counsel's advice. At most, he testified that he had *consulted* with his attorney about the appropriate course of action under the circumstances. Nor did the court specifically *ask* the plaintiff whether he acted on the advice of counsel in connection with the September, 2015 transfer of the $70,219.99 from the parties' joint account into a separate account that the defendant could not access. Rather, the court simply asked, "Were you represented by counsel at that time?" And the plaintiff responded, "Yes, I did *consult* with counsel." (Emphasis added.) The record, therefore, does not support the plaintiff's argument on appeal that

he repeatedly testified about his *reliance* on counsel's advice when he withdrew the $70,219.99 from the parties' joint account in violation of the October 27, 2014 court order. Nor does it support his argument that counsel advised him to do so. The record therefore lacks the evidentiary foundation necessary for our favorable consideration of the plaintiff's argument. See *Baker* v. *Baker*, 95 Conn. App. 826, 832, 898 A.2d 253 (2006).

In *Baker*, the trial court held the defendant in contempt for failing to make certain alimony and child support payments pursuant to a pendente lite order. See id., 830. While the defendant was testifying in connection with the contempt proceeding brought against him for his failure to pay, his counsel attempted to elicit testimony that "when he failed to make the required payments, he did so in reliance on her legal advice. The plaintiff's counsel objected to these questions as attempts to solicit hearsay, and the court sustained the objections." (Footnote omitted.) Id. During closing arguments, the defendant's counsel "argued that her client's noncompliance with the court's order was not wilful because . . . [h]e relied on the advice of counsel." (Internal quotation marks omitted.) Id.

Much like the plaintiff in the present case, the defendant in *Baker* argued that his conduct was not wilful. See id. This court rejected that argument in *Baker*, holding that "there was no competent evidence before the court to establish that [the defendant acted on his counsel's advice]." Id., 831–32. This court noted that "[i]n urging us to conclude that reliance on counsel's advice is a defense to contempt, the defendant expects this court to assume that he so relied." Id., 832. Because counsel's representations that the defendant acted on her legal advice were not evidence and it was improper for an appellate court to find facts, the defendant's claim failed. See id., 832–33.

The record of the contempt proceedings in the present case similarly lacks the evidentiary foundation claimed by the plaintiff.[7] He, too, asks us to "assume that he so relied [on his counsel's advice]"; id., 832; when he withdrew the $70,219.99 from the parties' joint account in violation of the court order on the basis of his testimony that he consulted with counsel about "what was appropriate" under the circumstances. Consulting with counsel and *actually relying* on counsel's advice, in our view, are not necessarily the same thing; consulting and thereafter relying on the advice provided involves two separate steps. One need not be a lawyer, like the plaintiff, to appreciate this distinction. Moreover, we cannot speculate as to what the plaintiff purportedly meant to say during the contempt proceedings. See *Baker* v. *Baker*, supra, 95 Conn. App. 832; see also *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009) (speculation and conjecture have no place in appel-

late review).

It was not error for the court to find that the plaintiff unilaterally withdrew the $70,219.99 from the joint account in violation of its October 27, 2014 order. The court construed his conduct to be a form of impermissible "self-help" and found that he "wilfully violated the [court] order . . . ." See, e.g., *O'Brien* v. *O'Brien*, supra, 326 Conn. 97 (party "may not engage in 'self-help' by disobeying a court order to achieve the party's desired end"). We cannot conclude that the trial court abused its discretion under the circumstances when it found the plaintiff in contempt. See, e.g., *Giordano* v. *Giordano*, supra, 127 Conn. App. 502.

We similarly reject the plaintiff's claim that the trial court "compounded its error" when it denied his motion for reconsideration. "[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . [A] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *Chartouni* v. *DeJesus*, 107 Conn. App. 127, 129, 944 A.2d 393, cert. denied, 288 Conn. 902, 952 A.2d 809 (2008). We review a trial court's denial of a motion for reconsideration for an abuse of discretion. *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006). "When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Liberti* v. *Liberti*, 132 Conn. App. 869, 874, 37 A.3d 166 (2012).

The court stated that it did not misapprehend the facts actually presented to it during the hearing on the motions for contempt. As previously discussed, and contrary to his argument on appeal, the plaintiff *did not* testify in that hearing that he relied on counsel's advice when he made the September, 2015 withdrawal in violation of the October, 2014 court order. Nor did the court specifically "[inquire] of the plaintiff as to whether in moving funds from the parties' joint account *he acted on the advice of counsel*, to which he testified that he had," as the plaintiff argued in his motion for reconsideration. Therefore, both his argument and his attempts to introduce additional evidence in support of that argument—an affidavit indicating that he relied on counsel's advice and the e-mail exchange allegedly between him and his previous counsel—amounted to

an attempted impermissible second bite of the apple after a multiday hearing. See, e.g., *Chartouni* v. *DeJesus*, supra, 107 Conn. App. 129.[8] Accordingly, we find no basis in the record on which to conclude that the court abused its discretion when it denied the plaintiff's motion for reconsideration.

## II

The plaintiff's second claim is that the trial court improperly denied the parties' joint motion to open and vacate the judgment of contempt. He argues that the court's memorandum of decision demonstrates that it "ignored or misconstrued important evidence and statements made at the hearing on the motion, thereby improperly turning a remedial order into a punitive one." According to the plaintiff, the trial court improperly concluded that there was no evidence before it demonstrating the "adverse professional effect" that the contempt finding would have on his career.[9] We are unpersuaded.

The record and the court's memorandum of decision disclose the following undisputed facts and relevant procedural history. On February 1, 2016, the parties, within the four month period set forth in General Statutes § 52-212a, filed a joint motion to open and vacate the judgment of contempt. The motion stated in relevant part: "The parties submit that it would be in the interest of justice to vacate [the findings of contempt] and otherwise leave the compliance orders in force."

The parties appeared before the court on February 22, 2016, to argue that particular motion. During oral argument, the plaintiff asserted: "I do believe there's a sound basis for [the motion to open and vacate]. I also do think that it's very deleterious to my career to have this contempt citation. I'm in the banking—I'm a lawyer. It's a question on every application, have you been . . . in contempt of any order? It would have ramifications for my licensing in the securities industry, et cetera. I think, likewise, the various issues that arose with [the defendant's] potential contempt . . . I think the best thing for us now is to just move on with a clean slate. We had a very contentious fall. Things are working well with us now. And it seems in the best interest of all parties to just start fresh and allow us to put that behind us."[10] Richard Albrecht, the plaintiff's newly retained attorney, was arguing another matter in a different courtroom and, therefore, was not present when the plaintiff made these statements. The court then continued the matter to a later date.

The parties again appeared before the court on March 7, 2016, to argue the motion to open and vacate. During that proceeding, Albrecht argued, inter alia, that the motion to open and vacate should be granted because the contempt finding would impact the plaintiff's professional career. As previously set forth, the court

denied the joint motion to open and vacate on March 9, 2016, without issuing a written decision.

On January 10, 2017, in compliance with this court's October 26, 2016 order, the trial court issued a written decision detailing the factual and legal reasons for its denial of the joint motion to open and vacate. The basis for the motion, according to the court, was that the adverse effects of a contempt finding on the plaintiff's professional career placed the parties in a " 'unique situation' " and, therefore, that the " 'interests of justice' " required vacatur of the contempt findings. The court stated, however, "[t]here is no evidence that the parties' circumstances are unique or distinguishable such that the findings of wilful contempt . . . should be vacated in the interests of justice." It also stated that "[t]here is no evidence of what, specifically, is or will be the adverse professional effect on the [plaintiff's] employment or career." Although the court stated that the defendant did not oppose the motion to open and vacate, the court found that she did not oppose it essentially to bring the proceedings to a close.

"We first set forth the legal standards governing our review. . . . A motion to open a judgment is governed by . . . § 52-212a and Practice Book § 17-4. Section 52-212a provides in relevant part: Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . Practice Book § 17-4 states essentially the same rule. . . .

"We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Gordon* v. *Gordon*, 148 Conn. App. 59, 64–65, 84 A.3d 923 (2014).[11]

After reviewing the record and the court's memorandum of decision, we conclude that the court did not abuse its discretion in denying the motion to open and vacate.[12] On February 22, 2016, the plaintiff argued that the contempt finding would be "very deleterious to [his] career." Albrecht made the same argument on March 7, 2016. Nevertheless, "argument is not evidence. As judges routinely admonish juries: Argument is argument, it is not evidence. . . . So, too, arguments of a

pro se litigant are not proof." (Citation omitted; internal quotation marks omitted.) *In re Justin F.*, 116 Conn. App. 83, 96, 976 A.2d 707, appeal dismissed, 292 Conn. 913, 973 A.2d 660, cert denied, 293 Conn. 914, 978 A.2d 1109 (2009), cert. denied sub nom. *Albright-Lazzari* v. *Connecticut*, 559 U.S. 912, 130 S. Ct. 1298, 175 L. Ed. 2d 1087 (2010); see also *Baker* v. *Baker*, supra, 95 Conn. App. 832–33 (representations of counsel are not evidence). Notwithstanding the arguably commonsense appeal of this argument, the plaintiff fails to point to where in the record supporting *evidence* exists, and we are unable to find such evidence in the record. Accordingly, the court did not abuse its discretion in denying the joint motion to open and vacate.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also filed a motion for contempt on September 24, 2015, alleging that the defendant violated the same October 27, 2014 order on various occasions. The court granted the plaintiff's motion in part and denied it in part. The defendant did not submit a brief in this appeal and, therefore, does not challenge the contempt finding as to her. As discussed in this opinion, however, the court's contempt judgment against the defendant is partially implicated by this appeal insofar as the joint motion to open and vacate the judgments of contempt sought to vacate the court's judgments of contempt rendered against *each* of the parties. Because the judgment of contempt against the defendant is not otherwise implicated by this appeal, however, references in this opinion to the judgment of contempt refers to the judgment rendered against the plaintiff.

[2] "[A] trial court ruling on a motion for contempt in a marital dissolution action is a final judgment for purposes of appeal." (Internal quotation marks omitted.) *Baker* v. *Baker*, 95 Conn. App. 826, 827 n.1, 898 A.2d 253 (2006); see also *Bryant* v. *Bryant*, 228 Conn. 630, 636, 637 A.2d 1111 (1994) (civil contempt finding is appealable final order); *Keller* v. *Keller*, 158 Conn. App. 538, 544, 119 A.3d 1213 (2015) (finding of contempt not subsumed into final judgment of divorce action), appeal dismissed, 323 Conn. 398, 147 A.3d 146 (2016) (certification improvidently granted).

[3] For example, the court asked the plaintiff to explain the timing of his withdrawal. He testified: "*That's when I was discussing with my counsel the appropriate course of action* because once there was the violation by [the defendant] of the verbal agreement that we had online access, where we'd agreed we would just not do it even though the court order said something different from what we were doing, we were—we thought [we] were about to settle the entire case, we felt that it was best to just see it through. And it was only when the settlement process fell completely apart and she appeared to be acting erratically, we became more concerned that something had to be done." (Emphasis added.)

In addition, when the court asked him what prevented him from withdrawing the funds before September, he testified: "Nothing prevented me. *It was more in discussion with counsel on what was the appropriate thing to do in that period of time when we were at the eve of settling the case.*" (Emphasis added.)

[4] The defendant's motion for contempt alleged only that the plaintiff violated the court's order by withdrawing the $70,219.99 from the joint account. During the hearing on November 2, 2015, counsel for the defendant stated that the initial $237,643.11 withdrawal was simply offered "on the issue of wilfulness" regarding the $70,219.99 withdrawal. Nonetheless, the court concluded that such withdrawal was in violation of the court order. The plaintiff makes no claim that he relied on the advice of counsel with respect to that initial unilateral withdrawal from the joint account. Because of the result we reach in this opinion, we do not need to analyze the effect of the court's conclusion with respect to the initial unilateral withdrawal of $237,643.11.

[5] This court may take judicial notice of filings in the Superior Court. See, e.g., *State* v. *Dyous*, 153 Conn. App. 266, 279–80, 100 A.3d 1004 (2014), appeal dismissed, 320 Conn. 176, 128 A.3d 505 (2016) (certification improvi-

dently granted).

[6] On the basis of our independent review of the parties' stipulation, which was incorporated into the court's October 27, 2014 order, we agree with the court's finding that the order was sufficiently clear and unambiguous so as to support a judgment of contempt. See *Giordano* v. *Giordano*, supra, 127 Conn. App. 502.

[7] Our review of the court's judgment holding the plaintiff in contempt is limited to the evidence actually before it on December 7, 2015, the date of its memorandum of decision finding him in contempt. As discussed later in this opinion, it would be improper for us to consider the evidence subsequently submitted in support of the plaintiff's motion for reconsideration, namely, his affidavit and the e-mails he attached to it. See, e.g., *Chartouni* v. *DeJesus*, 107 Conn. App. 127, 129, 944 A.2d 393 (motion to reargue or reconsider is not opportunity to get second bite of apple), cert. denied, 288 Conn. 902, 952 A.2d 809 (2008).

[8] The court also properly concluded that the plaintiff's reliance on *O'Brien* v. *O'Brien*, 161 Conn. App. 575, 128 A.3d 595 (2015), rev'd, 326 Conn. 81, 161 A.3d 1236 (2017), was misplaced. Although the trial court in *O'Brien* denied the defendant's motion for contempt because the plaintiff acted on counsel's advice when he violated certain automatic orders; see id., 583, 591; this court, on appeal, "[took] no position on whether a party may shield himself or herself from a finding of wilful contempt by showing that he or she relied on the advice of legal counsel." Id., 591 n.15. Nor did our Supreme Court address that specific issue. See *O'Brien* v. *O'Brien*, supra, 326 Conn. 85–86. Therefore, even if the plaintiff in the present case actually testified that he relied on counsel's advice, his motion for reconsideration failed to present any *controlling* authority that the court overlooked. See, e.g., *Chartouni* v. *DeJesus*, supra, 107 Conn. App. 129.

[9] The plaintiff also argues that "there are several problems with [the court's finding with respect to the defendant's reasons for agreeing to the joint motion to open and vacate]." Regarding the motion to open and vacate, the defendant testified that she "agree[d] [to] whatever [the court] decide[s] is in the best interest of us, and I respect your decision. That's what I need to add. That's it." The defendant did not file a brief in this appeal and, therefore, does not challenge the denial of the joint motion to open and vacate. The motion to open and vacate also relied on § 10 of the parties' separation agreement, which states that they agreed to file the motion because "they believe such findings could interfere with the parties' future employment." Accordingly, we do not address the court's finding with respect to the defendant.

[10] The plaintiff was not sworn in to testify and acknowledged that his statements were "argument" in support of the motion to open and vacate.

[11] We note that "[c]ivil contempt is designed to compel future compliance. After a finding of civil contempt, the court retains the jurisdiction to vacate the finding or to give the contemnor the opportunity to purge the contempt by later compliance with a court order." *Monsam* v. *Dearington*, 82 Conn. App. 451, 456–57, 844 A.2d 927 (2004); see also *Eric S.* v. *Tiffany S.*, 143 Conn. App. 1, 9, 68 A.3d 139 (2013). Although it could do so, a court is not required, however, to vacate its judgment after a contemnor has purged himself or herself of the contemptuous acts. In this case, the court identified three violations of the court order: the improperly established joint bank account, the $237,643.11 withdrawal, and the $70,219.99 withdrawal. Assuming that the plaintiff corrected the first and third violations identified by the court, there is no evidence in the record that he corrected the second violation by returning the $237,643.11 to a properly constituted joint account. Even if that violation is ignored, however, the plaintiff has not established that the court abused its discretion in declining to vacate the contempt judgment for the reasons it set forth in its December 7, 2015 and January 10, 2017 memoranda of decision, and its January 9, 2017 articulation.

[12] We acknowledge the plaintiff's arguments that the court's denial of the motion to open and vacate "conflicts with the public policy that encourages parties to end their disputes by settling claims" and that "the court in a dissolution case must reach a result that is equitable." As general propositions, we agree that courts favor settlement in dissolution cases and that a dissolution action is essentially equitable in nature. We are unpersuaded by the plaintiff's arguments, however, because the parties asked the court to undo previous factual findings and the contempt judgment rendered as a result of those findings, made after multiple days of hearings, and agreed that not doing so was within the court's discretion.